Kenneth S. MacAffee, J.
This is a proceeding pursuant to article 78 of the Civil Practice Act instituted by the petitioner, Robert M. Neary, for an order annulling an order of the respondent, Commissioner of Education of the State of New York, hereinafter referred to as Commissioner, dated May 16, 1961. That order of the Commissioner laid out a central school district designated as Central School District No. 1 of the Towns of North Castle, Mount Pleasant, New Castle and Bedford, Westchester County, consisting of the territory comprising Union Free School District No. 5 of the Towns of North Castle, New Castle and Bedford, Common School District No. 2 of the Town of North Castle, and Common School District No. 6 of the Towns of Mount Pleasant, New Castle and North Castle, all of the said Union Free and Common School Districts being in the County of Westchester and State of New York. Thereafter an order was made by the Commissioner requiring a vote of the qualified electors of the district so laid out to be held on the 15th day of June, 1961 at Armonk for the approval or disapproval of the Central School District as laid out by the Commissioner and if adopted to proceed with the election of the members of the Board of Education. The basis of the petitioner’s application is to annul the aforesaid order of the Commissioner dated May 16,1961 on the ground that the same is arbitrary and capricious.
An order to show cause was issued June 13,1961 by Mr. Justice Hunt requiring the Commissioner to show cause why a stay of the aforesaid order providing for the election should not be granted pending the determination of this proceeding. On the 14th day of June, 1961 Mr. Justice Hunt granted a stay with respect to the aforesaid order of the Commissioner, except that the order of the respondent was not stayed with respect to the holding of the election to determine whether the proposed central school district should be established and in the event of a favorable vote to permit the district to proceed to elect a Board of Education for the newly created district pursuant to the provisions of section 1802 and 1803 of the Education Law. The aforesaid order of Mr. Justice Hunt also provided that the Commissioner was required to show cause at a Special Term of the court to be held on July 14, 1961 as to why the aforesaid order of the Commissioner dated May 16, 1961 should not be modified, vacated, annulled and set aside. Thereafter, by stipulation, seven persons, individually and as taxpayers, were permitted to intervene as intervenors-petitioners. Twelve persons, as individuals and school trustees, and as such trustees con *550 stituting certain Boards of Education, were also permitted by this stipulation to intervene as intervenors-respondents.
The election was held on the 15th day of June, 1961 with the result that the proposal was approved by a vote of 1,404 in favor thereof and 257 in opposition thereto. Thereafter, the members of the Board of Education of the central school district were elected. However, in accordance with the aforesaid stay of proceedings the newly elected board has not functioned, The argument on the original motion has been adjourned from time to time by the consent of the parties. At a Special Term held on October 27,1961 oral argument was heard and the parties have submitted memorandums in support of their contentions.
From the arguments presented and the memorandums filed it would appear that the petitioner and the petitioners-intervenors are united and generally in accord with respect to the reasons advanced in support of the motion and that the intervenors-respondents are likewise in accord with the views expressed by the Commissioner in opposition to the motion.
The petitioner resides within Common School District No. 6 which is referred to and will hereafter be referred to as the “ Bear Ridge District.”
In 1958 pursuant to an order of the Commissioner, an election was held to determine whether the Bear Ridge District and Union Free School District No. 9 (Pleasantville) should be consolidated. That election, which required an affirmative vote in each of the two districts, resulted in an affirmative vote in Bear Ridge but was rejected by the voters of Pleasantville. The petitioner contends that the voters of Pleasantville would vote in the affirmative for such a consolidation if the proposal for consolidation was again submitted for a vote to the voters of those two districts. In the meanwhile the school population has increased and the district, which has heretofore taken contract students, has advised that it will not be able to continue to take students from the districts in such numbers.
All parties seem to be in agreement that the educational facilities of the area must be expanded and increased to meet the needs of the children. Several plans have been under consideration with support for all and opposition expressed to all.
Following the Commissioner’s order dated May 16, 1961 laying out the proposed Central School Distinct pursuant to the provisions of section 1801 of the Education Law there were filed with the Commissioner petitions containing the names of 2,146 out of 3,050 of the qualified voters within the proposed district requiring a meeting of the qualified voters within the proposed *551 district to determine by vote whether the district should be organized pursuant to the provisions of section 1802 of the Education Law. The Commissioner also received petitions in opposition to such procedure containing the names of 337 voters out of the 600 qualified voters of District No. 6 of Mount Pleasant.
The Commissioner has interposed an answer denying the material allegations of the petition, setting forth a separate defense and an objection in point of law.
The Commissioner in opposing this application contends that the petition fails to state facts sufficient to constitute a cause of action. In support of this argument the Commissioner contends that the petition does not contain any allegations of material and relevant facts which would sustain the contention that the action of the Commissioner was arbitrary and capricious. Such allegations of fact are material and necessary to create issues of fact which would require a hearing and determination by the court.
The test to be applied in a proceeding of this nature is not whether a different district might have been laid out or that some other authority might have created a different district but whether the act of the Commissioner, in laying out the district, was such that it would be held that no reasonable man would have laid out this territory as a central school district. (Matter of Board of Educ. v. Wilson, 277 App. Div. 809, 810, affd. 303 N. Y. 107.)
An analysis of the petition and the papers in support of the application reveals that the petitioner alleges (1) that the Commissioner should have resubmitted to the Bear Ridge and Pleasantville Districts for a vote a resolution providing for the consolidation of these districts; (2) that agents and employees of the Commissioner had stated that no further merger of the school districts would be made until each of the school districts involved had taken a vote to determine whether each district favored such a merger; (3) that the proposed central school district will not solve the problem of education in the community and (4) that the action of the Commissioner was therefore arbitrary and capricious.
The papers submitted by the parties do disclose that many meetings were held within the area affected and that various Boards of Education together with committees appointed in the several districts had made studies of the situation and had had the help and assistance of both local and State education officials.
There was no duty imposed by law on the Commissioner to resubmit the proposition of whether the Bear Ridge and Pleasantville Districts should be consolidated. Following the vote *552 rejecting the consolidation, as heretofore stated, and on or about July 24, 1959 the Commissioner withdrew his consent to the proposed consolidation stating that “upon further study and consideration of the educational needs of the area, it appears undesirable to have such a consolidation between said districts further pursued. ’ ’ The procedure for the consolidation of school districts gives to the qualified voters of such districts the power to initiate such a proposal. (Education Law, § 1015 et seq.) It does not appear that any formal application pursuant to statute for such a consolidation was thereafter presented to the Commissioner. Pursuant to the provisions of section 1511 of the Education Law the Commissioner has the power to approve or disapprove of such proposed consolidation.
With respect to whether there was an understanding that each district would have the opportunity to vote as an individual district prior to the laying out of a central school district, there is considerable controversy. Affidavits have been submitted with respect to this contention, some of which are in support of this contention and others which are contrary to the contention. However, there is no requirement in the law which requires the Commissioner to receive and consider either informal petitions or the results of such informal votes.
No purpose would thereby be served in determining the question of fact created by the pleadings and affidavits with respect to whether or not any such representations were made. (Matter of Board of Educ. v. Allen, 19 Misc 2d 409; 6 A D 2d 316, affd. 6 N Y 2d 871.)
The contention that the proposed central school district will not solve the problem of education in the community affected is a conclusory statement and no facts are set forth which would sustain this conclusion. Likewise, the statement that the action of the Commissioner was arbitrary and capricious is devoid of any facts which would justify such a conclusion.
The basis of this proceeding is not that the determination of the Commissioner in laying out the central school district is one which no reasonable man would have reached but rather the advancement of other alternatives in the formation of a district for the solution of the educational needs of the children in the area. Such a contention is not sufficient to warrant judicial interference. The test is not whether a better plan might exist. The courts have held that it is not enough to argue or even prove that some other plan might have been preferable. A different conclusion by the Commissioner may not be successfully attacked unless it be shown that the determination of the Commissioner is one which no reasonable man would have reached. The pro *553 visions of the Education Law clothe the Commissioner with the power to lay out the central school district. (Education Law § 1801 et seq.) The law, however, does give to the voters of the proposed central school district, as laid out by the Commissioner, the power to approve or reject such plan.
This court concludes that there is no triable issue of fact raised in this proceeding, the determination of which would permit the conclusion that there was no rational basis for the determination of the Commissioner. (Matter of Clark, 12 Misc 2d 988; Matter of O’Brien v. Commissioner of Educ., 3 A D 2d 321, 325.)
The petitioners have failed to establish that the action of the Commissioner was unreasonable, arbitrary or capricious. The Commissioner acted in accordance with the powers conferred upon him by statute in laying out the central school district in question. (Matter of Board of Educ. v. Wilson, 303 N. Y. 107, 115, supra; Matter of Board of Educ. v. Wilson, 286 App. Div. 654, affd. 1 N Y 2d 793.)
The cross motion of the Commissioner respondent is therefore granted and the petition dismissed, without costs, for failure to state facts sufficient to constitute a cause of action.
The motion to vacate the stay granted by the order of Mr. Justice Hunt dated June 14, 1961 is granted.